UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BRUCE A. RIDDLE,

            Plaintiff,

     v.                                      Civil No. 08-549-HA

                                          OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.

_____

HAGGERTY, District Judge:

      Plaintiff Bruce Riddle seeks judicial review of a final decision by the Commissioner of

the Social Security Administration denying his application for Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI) payments.  This court has jurisdiction to review

the Commissioner's decision under 42 U.S.C. § 405(g).  For the following reasons, the

Commissioner's decision is affirmed.

**<u>STANDARDS</u>**

1 - OPINION AND ORDER

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status.  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits.  20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See* 20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings).  The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant has the burden of producing medical evidence that establishes all of the

requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for

purposes of awarding benefits under the Act.  20 C.F.R. § 404.1520(f)(1).  If the Commissioner

meets this burden, the claimant is deemed not disabled for purposes of determining benefits

eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

A claimant may not be considered disabled if drug addiction or alcoholism (DAA) is

material to the claimant's disability.  42 U.S.C. § 423(d)(2)(C).  If the claimant is found to be

disabled and medical evidence of a substance abuse disorder exists, the Commissioner must

determine whether the claimant's DAA is a contributing factor material to the finding of

disability.  20 C.F.R. §§ 404.1535, 416.935; *see also Bustamante v. Massanari*, 262 F.3d 949,

954-55 (9th Cir. 2001).  Evidence of DAA is considered material if the claimant would not be

disabled if he or she stopped using alcohol or drugs.  20 C.F.R. §§ 404.1535(b), 416.935(b).  The

claimant bears the burden of showing that DAA does not materially contribute to his or her

disability.  *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

The Commissioner's decision must be affirmed if it is based on proper legal standards

and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. §

405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v.

Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  The Commissioner's denial of

benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so

long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ).

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the

4 - OPINION AND ORDER

Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

## FACTS

The relevant facts, which are drawn from the extensive administrative record and the ALJ's decision, are summarized here. Plaintiff was fifty years old at the alleged disability onset date and fifty-eight years old at the time of his hearing. Plaintiff has a high school diploma, attended one year of college, and has earned an emergency medical technician certificate. Plaintiff has past relevant work experience as a gas station attendant, telemarketer, motel manager, inventory counter clerk, apartment manager, hospital orderly, punch press operator, and kitchen helper. Following the onset of the alleged disability, plaintiff has worked part-time as a janitor. The ALJ determined that his employment as a janitor did not constitute SGA.

Plaintiff applied for benefits on March 23, 2000, alleging disability beginning January 13, 2000, from physical impairments including: lumbar disc disease, subacromial and trochanteric bursitis, hypertension, dyspnea, chronic obstructive pulmonary disease (COPD), and chronic thumb pain. Additionally, plaintiff alleges disability caused by mental impairments including a major depressive disorder and personality disorder not otherwise specified. Plaintiff's insured status expired on December 31, 2003. Plaintiff's application was denied

5 - OPINION AND ORDER

initially and on reconsideration.  On July 8, 2002, an ALJ issued a decision finding the claimant

not disabled.  On October 1, 2003, the Appeals Council vacated the decision and remanded the

case for further proceedings.

On April 7, 2004, the ALJ conducted a remand hearing, and once again issued a decision

finding plaintiff not disabled.   Subsequently, plaintiff appealed this decision in the United States

District Court for the District of Oregon.  This court concluded that further proceedings would be

necessary to resolve pending issues and remanded the case.

A new ALJ conducted plaintiff's third hearing on December 5, 2007.  The ALJ heard

testimony from plaintiff, who was represented by counsel, and a VE.  A decision was issued on

February 11, 2008, finding plaintiff disabled but ineligible for disability benefits due to the

materiality of his drug and alcohol abuse.  This decision was the final decision of the

Comissioner for purposes of judicial review.  20 C.F.R. § 404.984.  Plaintiff subsequently

initiated this action.

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged

disability onset date.  Tr. 942, Finding 2.[1]

At step two, the ALJ found that plaintiff had the following severe impairments:

depression, low back pain, asthma, COPD, and drug and alcohol dependence.  The ALJ further

opined that, if plaintiff discontinued his substance use, plaintiff's remaining impairments, would

continue to cause more than a minimal impact on his ability to perform basic work activities.  Tr.

942, Finding 3.

---

[1] Tr. refers to the Transcript of the Administrative Record.

6 - OPINION AND ORDER

At step three, the ALJ found that plaintiff's impairments, singly or in combination, meet Listings 12.04 for depression and 12.09 for substance abuse in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 20 C.F.R. §§ 404.1520(d). Tr. 944, Finding 4. The ALJ found that if plaintiff discontinued his substance abuse his impairments would not meet or equal the requirements of any listed impairment. *Id.*

The ALJ determined that,without substance abuse, plaintiff would have the RFC to perform light work with only occasional climbing, crouching and crawling, and that he should avoid exposure to fumes, gases, and other dirty air environments. Tr. 945, Finding 5.

At step four, the ALJ found that, prior to his date last insured, plaintiff was capable of performing his past relevant work as a motel manager and manager of subsidized housing apartments. Tr. 945, Finding 6. This finding made step five unnecessary.

## DISCUSSION

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits due to a number of alleged errors including: (1) improperly finding plaintiff not credible, (2) failing to address Dr. Matsunaga's opinion properly, (3) failing to address the opinions of Drs. Ogisu, Campbell, and Jain, (4) failing to develop the record properly, (5) failing to make a severity finding for multiple significant impairments, and (6) failing to properly address plaintiff's RFC.

## 1.     The ALJ's Credibility Finding.

Plaintiff asserts that the ALJ erred in discrediting his testimony. In evaluating a plaintiff's testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged

symptoms.  20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273,1281-82 (9th Cir. 1996)

(citation and quotation omitted).  An ALJ may consider medical evidence as a relevant factor in

determining a claimant's credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

     The Ninth Circuit set out a threshold test in *Cotton v. Bowen* to assist the ALJ in deciding

whether to accept a claimant's subjective symptom testimony.  799 F.2d 1403 (9th Cir. 1986); *see

also Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  If the claimant produces evidence

that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the

claimant's testimony about the severity of symptoms only after offering specific, clear, and

convincing reasons for doing so.  *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

     Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms

must meet two tests.  First, the claimant "must produce objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged. . . .'"  *Bunnell*, 947 F.2d at 342; (quoting 42 U.S.C. § 423(d)(5)(A) (1988));

*see also Cotton*, 799 F.2d at 1407.  Second, he or she must show that the impairment or

combination of impairments could reasonably be expected to produce some degree of the alleged

symptoms.

     Here, the ALJ found that plaintiff's impairments "may cause him some periodic

discomfort, but his testimony concerning his pain is not supported by the objective medical

evidence."  Tr. 949.  Because the ALJ found that plaintiff's medically determinable impairments

could reasonably be expected to produce some degree of symptom, the ALJ was required to

provide clear and convincing reasons for rejecting his subjective symptom testimony.  *Dodrill*, 12

F.3d at 918.

The ALJ made numerous and specific references to instances where plaintiff exaggerated his physical limitations and appeared evasive to issues regarding his substance abuse. For example, plaintiff testified that his alcoholism relapse began with his mother's death on May 19, 2006. However, the ALJ notes that records demonstrate plaintiff used alcohol eleven days prior to her death, at which point he was suspended from work for being intoxicated. Tr. 949. In fact, plaintiff testified that he continues to drink periodically even though he has told various healthcare providers that he has been sober for years. Tr. 944. Additionally, the ALJ found plaintiff evasive because he replied dishonestly to doctors when asked about his legal problems. Plaintiff reported being charged with three DUI's but failed to mention that he was also sent to jail on two occasions for possession of marijuana and assault with a deadly weapon. Tr. 943.

Furthermore, Dr. Kolillis noted that plaintiff appeared "satisfied to be living on assistance and has no motivation or plans to work." Tr. 950. Although he owes $10,000 in back child support, plaintiff has turned down additional work for reasons unrelated to his impairments. Tr. 950. Such information serves as evidence of plaintiff's motivation to exaggerate his physical impairments.

The ALJ set forth all of these observations in his decision. They represent clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony. This court will not substitute its judgment for that of the ALJ, and if the evidence can support either outcome, the court must uphold the ALJ's decision. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001).

**2.     The ALJ's Evaluation of Dr. Matsunaga's Opinion.**

Plaintiff contends that the ALJ erred in discrediting the opinion of Dr. Matsunaga. The

opinion of a treating physician cannot be lightly disregarded. *Lester*, 81 F.3d at 830-831.

However, "it is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability." *Tonapetyan*, 242 F.3d at 1148 (citing *Magallanes v. Bowen*,

881 F.2d 747, 751 (9th Cir. 1989). The ALJ may reject the contradicted opinion of a treating or

examining physician by stating specific and legitimate reasons, and may reject an uncontradicted

opinion by providing clear and convincing reasons, supported by substantial evidence in the

record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); see also *Lester*, 81 F.3d at

830-32. An ALJ may properly discount the opinion of a treating or examining source that is

based on the self-reporting of a properly discredited claimant. *Bickell v. Astrue,* No. 08-35454,

2009 WL 2700320, at *1 (9th Cir. 2009) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

Cir. 2001)).

Here, whether the opinion of Dr. Matsunaga accurately reflected plaintiff's limitations

excluding substance abuse depended on the extent of his knowledge of the abuse. The record

shows that plaintiff did not truthfully disclose his substance abuse to the doctor.

Plaintiff presents his self-reporting of sobriety to doctors as if it were a proven finding of

sobriety. However, as discussed above, the ALJ referred to several examples of plaintiff's

dishonesty regarding his continued substance abuse.

Additionally, during a group therapy session about forgiveness, plaintiff stated, "I forgive

myself everyday when I open a beer." *Id.* Such a statement is inconsistent with his testimony and

his reports of sobriety to treating doctors.

Finally, the ALJ noted that plaintiff often admitted to the use of marijuana only after test

results made denial impossible. For example, plaintiff's urine test proved positive for marijuana

on March 13, 2007.  Tr. 950.  When confronted with the test results, plaintiff admitted to smoking marijuana, and urine tests were positive again less than two months later.  *Id.*

The record clearly demonstrates that plaintiff has struggled with substance abuse issues intermittently until the present. Because Dr. Matsunaga was unaware of these problems, his opinion does not accurately reflect the limitations of plaintiff during times of sobriety.  The ALJ provided a specific and legitimate basis, supported by substantial evidence, upon which to reject his opinion.

**3.    The ALJ's Evaluation of the Opinions of Drs. Ogisu, Campbell, and Jain.**

Plaintiff asserts that the ALJ did not properly analyze the opinions of Drs. Ogisu, Campbell, and Jain.   Even assuming that each of the doctors at issue are treating physicians whose opinion is deserving of additional consideration, the ALJ addressed the opinion of each and rejected that opinion based on clear and convincing evidence.

Plaintiff specifically contends that the ALJ failed to consider Dr. Ogisu's opinion.  On the contrary, the ALJ noted that Dr. Ogisu found plaintiff's pain to "be moderately severe on an intermittent basis." Tr. 948.  The ALJ explained that nowhere did the doctor state that plaintiff was disabled nor did he indicate any vocational limitations.  Doctor Ogisu also noted that plaintiff could "maintain standing, sitting, and supine lying without complaint."  Plaintiff was able to "heal and toe walk without difficulty; forward reaching was unrestricted; he was able to get down into a deep knee bend, and grip was strong bilaterally." Tr. 949.  The ALJ considered Dr. Ogisu's entire evaluation, and by doing so, he found that the objective results of the doctor's examination demonstrated plaintiff's ability to perform light work.  The ALJ appropriately considered Dr. Ogisu's opinion.

Plaintiff also claims that the ALJ failed to assign any weight to the opinion of Dr. Campbell, an orthopedist who inspected plaintiff's shoulder and hip pain.  However, the ALJ noted that updated records from Providence Care Center "indicate treatment for bilateral shoulder bursitis, knee osteoarthritis, neck degenerative joint disease, and lumbar degenerative joint disease."  Tr. 948.  Subsequently, the ALJ listed his reasons for giving little weight to this opinion including the fact that Dr. Campbell found it appropriate merely to prescribe Tylenol and glucosamine and that plaintiff would have been prescribed pain medication if he quit smoking marijuana.  *Id.*  The ALJ analyzed Dr. Campbell's entire evaluation in deciding that plaintiff's impairments were not severe.  The ALJ provided clear and convincing reasons for this decision.

Similarly, plaintiff alleges that the ALJ "ignored" the opinions of Dr. Jain.  In particular, plaintiff argues that the ALJ failed to address Dr. Jain's opinion that he will always have chronic pain.  *See* Pl.'s Memo at 20.  The ALJ is required to consider all of the evidence; however, "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)(citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)).

In stating that he will "likely never be able to *completely* take his pain away," Dr. Jain referred to plaintiff's bursitis.  Tr. 1084 (emphasis added).  Plaintiff did not provide substantial objective medical evidence that indicated those impairments were significant, and the evidence does not show that these alleged impairments affect his RFC.

While never expressly mentioning Dr. Jain's name, the ALJ did address plaintiff's pain caused by bursitis and references Dr. Jain's report.  Specifically, the ALJ quoted Dr. Jain's opinion that plaintiff appeared "well nourished, healthy appearing, [and in] no distress." Tr. 942.  As

discussed above, the ALJ adequately addressed plaintiff's bursitis in discussing the opinions of

Drs. Ogisu and Campbell.  The ALJ appropriately considered Dr. Jain's opinion.

**4.      The ALJ's Development of the Record.**

The ALJ has a duty to "develop the record fully and fairly and to ensure that the claimant's

interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*,

276 F.3d 453, 459 (9th Cir. 2001).  However, the duty is only triggered when there is ambiguous

evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Id.*  In

the present case, plaintiff has failed to identify any ambiguity in the record.  Additionally, the

ALJ was presented with and analyzed sufficient medical evidence upon which to make his

disability determination.

**5.      The ALJ's Severity Findings.**

Plaintiff argues that the ALJ failed to make severity findings with respect to a number of

plaintiff's physical impairments, including his subacromial and trochonteric bursitis, dyspnea,

hypertension, and various gastric disorders.  Plaintiff argues that the ALJ should have made

severity findings with respect to these impairments at step two in the analysis, and then

considered these impairments in combination with those impairments the ALJ did find to be

severe.  However, plaintiff offers no evidence that any of these alleged impairments in some way

limited plaintiff beyond the limitations incorporated in his RFC.

At step two of the analysis, the ALJ collectively discussed the impairments identified by

plaintiff.  After addressing those that he found to be severe, the ALJ found that all other

impairments were "transient in nature" and did not limit plaintiff's ability to perform basic work

activities.  Tr. 944.  In this analysis, the ALJ specifically noted plaintiff's peptic ulcers, which

caused plaintiff to miss work due to gastric problems; plaintiff's shoulder pain, caused by

trochanteric bursitis; and his suicidal ideation. *Id.* Moreover, at step four of the analysis, the ALJ expressly noted that plaintiff's "physical limitations are not found to impose any greater limitations than those contained in the [RFC]." Tr. 948. The ALJ implicitly made a severity determination as to each of plaintiff's impairments in step two of his analysis, and then reviewed the evidence while formulating the RFC at step four. Any error at step two was cured at step four. Thr ALJ's findings are upheld by substantial evidence in the record.

Plaintiff also contends that the ALJ did not address plaintiff's personality disorder. On the contrary, the ALJ did address Dr. Kolitis' diagnosis of a personality disorder. Tr. 943. The ALJ noted that Dr. Kolitis also found that plaintiff was "generally functioning pretty well and having some meaningful interpersonal relationships." *Id.* Dr. Kolitis and the ALJ opined that plaintiff "may have some difficulty working with the general public," but his "overall attention and concentration abilities were good." *Id.* The doctor found no evidence of psychomotor agitation or retardation. *Id.* Further, plaintiff presented no evidence that his personality disorder further limits his ability to work. The ALJ did consider plaintiff's personality disorder at step two, albeit without making an explicit severity finding. The ALJ's findings are free of legal error and are upheld by substantial evidence in the record.

**6.      The ALJ's Assessment of Plaintiff's RFC.**

Plaintiff argues that the ALJ improperly evaluated his RFC. In particular, plaintiff alleges that the ALJ improperly determined that plaintiff was able to perform work as a hotel manager or security housing manager. Plaintiff relies heavily on the ALJ's statement that "the best indication of what [plaintiff] can actually do is what he did from 2004 to 2005 when he was working and not drinking excessively." *See* Pl.'s Memo at 25; Tr. 951. During the specified time, plaintiff held sheltered work as a janitor, working only twenty hours per week.

Plaintiff asserts that because this is the best indication of what he can do, and the janitorial work was not SGA, he would therefore be unable to satisfy the demands of a full-time job.  Pl.'s Memo at 25.  In so doing, plaintiff misconstrues the significance of the statement.  Plaintiff's past janitorial work simply demonstrates that he is able to maintain a steady employment schedule when sober.  Part-time sheltered work is not the defined limit of plaintiff's ability.  In fact, the record shows and the ALJ noted that plaintiff had wanted additional hours of janitorial work.  Tr. 950.  Moreover, the VE testified that the motel manager and manager of housing security positions could be performed under plaintiff's RFC.  Tr. 951.  Therefore, the ALJ's RFC determination was based on substantial evidence in the record and was free of legal error.

## **CONCLUSION**

Based on the foregoing, this court concludes that the findings of the Commissioner are based upon correct legal standards and are supported by substantial evidence existing in the record.  The Commissioner's decision denying Bruce A. Riddle's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this  23   day of September, 2009.


   /s/ Ancer L. Haggerty

Ancer L. Haggerty
United States District Court

15 - OPINION AND ORDER